STATE OF MAINE

Sagadahoc, ss.

SUPERIOR COURT,
AMH   SAG- 11/11/2009

JOYCE MATHEWS

v.

Docket No. SAG-RE-07-012

COURT STREET REALTY
and KYLE ROGERS

Defendants

## ORDER AND JUDGMENT

This civil action came before the court for a bench trial on November 6, 2009.   The parties were present and presented evidence.   Plaintiff Joyce Mathews represented herself, and the Defendant Court Street Realty and Kyle Rogers appeared with their counsel, Ivy Frignoca, Esq. Based on the entire record, this court adopts the following findings of fact and conclusions of law and renders judgment as follows.

### Background

This case arises out of the Plaintiff's purchase of real property in West Bath in July 2005. Soon after the purchase, she discovered various problems with the property, and brought suit in 2007 against the sellers and the real estate agency and broker who represented the sellers in the transaction.

Initially, the complaint included claims made by or on behalf of the Plaintiff as well as mother and minor son, but the mother's and son's claims have been dismissed. The sellers have been dismissed as defendants. The only remaining claims are those of the Plaintiff Joyce Mathews against the seller's real estate agency, Court Street Realty, and Kyle Rogers, the real estate broker who handled the sale.

At the trial, the parties agreed to the admission of the discovery deposition testimony of Plaintiff and her mother, with the exception of certain portions objected to by the Defendants on grounds of hearsay and/or relevance.[1]   Plaintiff testified on cross-examination, and Defendant Rogers also testified on direct and cross-examination. Plaintiff's Exhibits 1-5 were admitted over objection, and Defendants' Exhibits 1-14 were admitted by agreement.

The remaining claims alleged fraud and misrepresentation, and negligent representation. Specifically, according to the complaint, the Plaintiff alleges that the Defendants are liable to her because[2]:

- They led Plaintiff to believe they were representing her as well as the sellers, and breached the duties associated with a "dual agency" relationship, and prevented her from hiring her own real estate agent

- They caused her to believe she did not need to obtain a building inspection and that they would arrange for one if needed

- They misrepresented the acreage of the property she was buying.

- They failed to disclose that the water supply to the property was undrinkable.

- They failed to disclose the existence of mold in the home.

- They failed to disclose that a death had occurred in the home.

---

[1]   Those objections are resolved as follows: the text at page 40, line 23 to page 41, line 3 are excluded on hearsay grounds. The text at page 58, lines 12-15 is admitted, not for its truth, but for the limited purpose of the Plaintiff's state of mind. The text at page 59, lines 2-4 is excluded as hearsay. The court will also exclude the statements of others (except statements of Kyle Rogers, which remain as party admissions) contained in the text at pages 101-115. The Defendant's other objections are overruled.

[2]   The complaint also makes reference to a bottle containing kerosene, presumably in the context of a claim against the sellers, who have been dismissed as parties. In any case, the Plaintiff at trial did not refer to the bottle in describing her claims against the remaining Defendants, and there is no evidence that either Court Street Realty or Mr. Rogers at any time was aware of, or should have been aware of, the bottle or the kerosene, so the bottle and kerosene are not discussed further.

2

*Findings of Fact*

Plaintiff Joyce Mathews purchased a doublewide mobile home and land at 62 Ledgewood Road, West Bath in July 2005. The sellers were Sharon and Gary Gaudette. Defendant Court Street Realty, a local real estate agency, was retained by the Gaudettes to help them sell the property. At all times relevant to this case, Court Street Realty acted through its principal, Kyle Rogers, so all references to Mr. Rogers in these findings and conclusions apply to Court Street Realty as well.

After signing a listing agreement with the Gaudettes, Mr. Rogers met with the Gaudettes to get information about the property for purposes of preparing a listing and to complete the Seller's Property Disclosure form required by law. (The disclosure form is contained in Defendant's Exhibit 4). Mr. Rogers believed the information he was provided to be true, and the information the Gaudettes provided to him is accurately shown in the listing and in the Seller's Property Disclosure form.

With respect to the water supply to the Gaudette home, which was made available through a drilled well, Sharon Gaudette told Mr. Rogers the water was "hard" but drinkable. She told Mr. Rogers there had been a water test in 2000, but that the result of the test was unavailable. Mr. Rogers noticed a Poland Spring water dispenser in the kitchen, but did not have any reason to believe the water was in fact unsafe or undrinkable.

Ms. Mathews found the property on-line through the listing that described the property as being located on a 2 acre lot and the property being for sale "as is." She contacted Mr. Rogers and also went to the property on her own. Sharon Gaudette showed her the house, and told Ms. Mathews that the water supply was "hard" but drinkable, essentially as she had told Mr. Rogers. Ms. Mathews went back to the house twice with Mr. Rogers for a second and third showing.

Each time Ms. Mathews went to the home, there were a number of people in the Gaudette home, so Ms. Mathews did not get the opportunity to inspect the property as thoroughly as she would have liked. However, she never asked Mr. Rogers to arrange for the occupants of the home to leave during any of her visits. She and Mr. Rogers saw nothing in the home during any of their visits to the Gaudette home that suggested there was mold in the home.

When Ms. Mathews decided to buy the property, she and Mr. Rogers met to go over and sign a purchase and sale agreement. The signed agreement is contained in Defendants' Exhibit 4. It contains specific provisions about the nature of Court Street Realty's involvement in the transaction, and also provisions giving Ms. Mathews as buyer the right to have the property inspected. The dual agency provisions in the agreement were not filled out.

Ms. Mathews and Mr. Rogers went over the agreement in detail, and he even read portions of the agreement word for word. Ms. Mathews did not indicate she had any difficulty reading or understanding the agreement, the Seller's Property Disclosure form, or other documents Mr. Rogers may have reviewed with her.

Ms. Mathews signed the agreement on May 1, 2005, offering to buy the house for a total of $145,000, putting $5,000 down. The Gaudettes accepted her offer. Within a few days of signing the agreement, she received a survey depicting the property. The survey actually was commissioned for an adjacent property, but the property she was buying is shown on the survey.

The purchase and sale agreement contains an error, in that it provides the wrong book and page number for the deed relating to the property. The reason for the error is that the Gaudettes were selling another lot, and the deed reference for the other lot erroneously appears in the purchase and sale agreement. However, the error is immaterial because the sellers at the closing executed the correct deed.

The property listing indicated that the Gaudette property was being sold "as is," and the purchase and sale agreement permitted the Plaintiff to have the property inspected before closing. However, she chose not to arrange for any home inspection. The Defendants did nothing to discourage her from doing so, nor did they tell her they would arrange for a home inspection.

After her offer was accepted and before closing, Ms. Mathews asked John Davies, another real estate broker, to represent her as a buyer's agent. Mr. Davies then contacted Mr. Rogers about sharing the sales commission, and Mr. Rogers offered to split the commission he and his agency expected from the sale, to give Mr. Davies or his agency $2,000. Presumably because his share of the split was too low, Mr. Davies declined to represent Ms. Mathews.

The closing on Ms. Mathews's purchase of the Gaudette property occurred on July 12, 2005. The Defendants were not responsible for preparing or reviewing the deed or any other documents for the closing. A title company representative appears to have conducted the closing. The original deed went to the registry for recording before being mailed back to Ms. Mathews.

There was a two-week delay between the date of closing and the date on which Ms. Mathews moved into the home. The delay appears to have resulted from the Gaudettes' failure to move out when they were supposed to. In any case, the Defendants were not at fault for the delay.

After moving in, Ms. Mathews discovered mold in the home and learned that there had been a death in the home. Her evidence plainly shows that there was mold in the home at the time she moved in. When the mold originated is not clear, but it seems likely that it started growing sometime after the property went under contract at the end of May, 2005. It was not evident to either Ms. Mathews or Mr. Rogers during any of their visits to the property, or otherwise

5

known to either of them.    The evidence did not indicate that Mr. Rogers ever went to the Gaudette home during the interval between the signing of the contract and the closing.

It is undisputed that a relative of the Gaudettes died in the home at some point, but there is no evidence that the Defendants had any reason to suspect or know of the death at any time before the closing.

After moving in, the Plaintiff also had the water tested, and the results came back indicating higher than recommended levels of iron, copper and manganese, none of which render the water unsafe or undrinkable, although they can affect taste and render the water "hard."

Plaintiff also came to believe that she had been sold three-tenths of an acre less than she was supposed to obtain.  However, the Defendants never represented that the area of the property was anything other than the two acres indicated in the listing agreement.    Plaintiff also did not prove the actual area of the property she purchased.

Since buying the property, she has listed the property for sale for $140,000.  Her listing does not suggest the water supply to the property is undrinkable, and the evidence did not show it to be, although it may be undesirable in terms of its taste.   She has received three offers, but none resulted in a sale.

*Conclusions of Law*

The complaint appears to allege fraud and negligent misrepresentation, and breach of fiduciary duty.

*Breach of Duty of Representation*

The breach of fiduciary duty claim, which admittedly is not clearly pleaded in the complaint drafted by Ms. Mathews's former attorney, rests mainly on her testimony that Court Street and Mr. Rogers assured her that they would "take care of her." She claims she understood

6

the statement to be that they would represent her. The Defendants deny that such a statement was made, and the court is unable to make any affirmative finding that it was. They also rely on the dual agency provisions of the purchase and sale agreement, which are plainly not applicable to the transaction in question. The fact that Ms. Mathews tried to arrange for Mr. Davies to become involved in the sale on her behalf indicates quite clearly that, at least at some point before closing, she knew that Court Street and Mr. Rogers were representing the sellers, not her.

The duties of a seller's agent are outlined in the Maine Real Estate Brokerage License Act, 32 M.R.S. § 11273. A seller's agent can assist the buyer with what the Act refers to as "ministerial acts," without assuming any obligation to the buyer. The evidence does not indicate that Mr. Rogers assisted Ms. Mathews at any time in the transaction except with ministerial acts. *Id.* § 11273(2)(C). The Act does prohibit seller agents from certain conduct in the nature of misrepresentation and failure to disclose, and those provisions will be considered in the context of the fraud and negligent misrepresentation claims.

For these reasons, the court concludes that the Plaintiff has failed to prove by a preponderance of the evidence that either Court Street Realty or Mr. Rogers ever acted in any way beyond serving as a seller's agent, or that either Defendant led her to believe that it or he was representing her, or otherwise assumed any duty or obligation to her of a fiduciary nature.

*Fraud and Negligent Misrepresentation*

The elements of fraud and negligent misrepresentation are different in some respects, primarily having to do with the state of mind of the person who makes the representation at issue.

Fraud requires intentional, knowing or reckless misrepresentation:

[A] defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance

7

upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

Letellier v. Small, 400 A.2d 371, 376 (Me. 1979).

Proof of fraud must be by clear and convincing evidence, meaning that it is "highly probable", not merely probable, that the fact to be proved is true. *See* Maine Eye Care Assocs. v. Gorman, 2006 ME 15, ¶19, 890 A.2d 707, 711.

As to negligent misrepresentation, the Law Court has adopted the Restatement formulation, as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Rand v. Bath Iron Works Corp, 2003 ME 122, ¶13, 832 A.2d 771, 774, *quoting* Restatement (Second) of Torts § 552(a)(1).

Negligent misrepresentation must be proved by a preponderance of the evidence.

The Maine Real Estate Brokerage License Act is relevant in determining whether a real estate agent acted negligently, because the Act reflects the Legislature's view of the extent of a seller agent's duty of care in conveying information to a buyer:

> A seller agent shall treat all prospective buyers honestly and may not knowingly give false information and shall disclose in a timely manner to a prospective buyer all material defects pertaining to the physical condition of the property of which the seller agent knew or, acting in a reasonable manner, should have known. A seller agent is not liable to a buyer for providing false information to the buyer if the false information was provided to the seller agent by the seller agent's client and the seller agent did not know or, acting in a reasonable manner, should not have known that the information was false. A seller agent is not obligated to discover latent defects in the property.

32 M.R.S. § 11273(2)(A).

Thus, the Act's requirement that a seller's agent "act in a reasonable manner" in obtaining and communicating information seems similar to the "reasonable care or competence" element of

8

the tort of negligent misrepresentation. The provision relieving a seller's agent of any duty "to discover latent defects in the property" is at least relevant to the scope of the agent's common law duty, if indeed it does not define the scope of duty as to latent defects.

As to the fraud claim, the court has found that Court Street and Mr. Rogers believed that the information they had received from the sellers about the acreage and the water supply to the property was true. The Plaintiff has not proved that either Defendant misled her into not getting a home inspection, or that either promised to arrange for an inspection. For purposes of intentional or knowing conduct, Plaintiff has not proved that either of the Defendants was aware of any of the defects or other issues that she now claims to have discovered at the home. For purposes of reckless conduct, she has not proved that either Defendant was aware of any risk that were defects in the home, or that the information provided by the sellers was untrue. Thus, the Plaintiff has not proved by clear and convincing evidence any intentional, knowing or reckless misrepresentation by either Defendant for purposes of her fraud claim.

The Plaintiff did not present any evidence as to the standard of care for a seller's agent. The Act's provision that a seller agent is "not obligated to discover latent defects"—considered alongside the absence of any independent evidence of the standard of care—rules out Defendants being found liable for negligent misrepresentation, because the mold, the water problem, the death (assuming it was even a defect), and any discrepancy in acreage, if there was one, all were latent, that is, not visible or apparent.

For these reasons, the court concludes that the Plaintiff has failed to meet her burden of proof on the claims set forth in the complaint.

9

*Judgment*

Defendants Court Street Realty and Kyle Rogers are hereby granted judgment against Plaintiff Joyce Mathews on all claims in the complaint. The Defendants are hereby awarded their costs. Pursuant to M.R. Civ. P. 79(b), the clerk is hereby directed to incorporate this Order and Judgment by reference in the docket.

Dated November 17, 2009

A. M. Horton
Justice, Superior Court

10