2005 ME 7

Peter TUCCI

v.

CITY OF BIDDEFORD.

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 6, 2004.

Decided: Jan. 14, 2005.

John A. Turcotte, Levis & Hull, P.A., Biddeford, for plaintiff.

Keith R. Jacques, Aaron P. Burns, Smith Elliott Smith & Garmey, P.A., Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Peter Tucci appeals from the summary judgment granted by the Superior Court (York County, *Brennan, J.*) to the City of Biddeford. Tucci sought the refund of fees he paid to the City for sewer services assessed to the business property he leased. Tucci argues that the court erred in applying the estimated benefits analysis and contends that he was entitled to summary judgment on his claim for unjust enrichment. We agree with Tucci's contention regarding the estimated benefits analysis, but we also conclude that genuine issues of material fact exist with respect to whether the City was unjustly enriched. Therefore, we vacate the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] Tucci has rented, since 1983, property located on Pearl Street, from which he operates a business. The City instituted a sewer-use fee system in 1991, and beginning in March of that year and continuing until May 2001, the City sent monthly statements for sewer-use fees to Tucci, which he paid. From May 1995 to May 2001, Tucci paid sewer-use fees totaling $12,190.53.

[¶ 3] Tucci's rented property is located in the River Dam Mill Complex. In 1963, the City laid a sewer line leading from a holding tank in the complex to a sewer line in the complex that led to the City's pump station. From that pump station, the City's force main leads to the City's sewer system. The sewer line from the holding tank to the City's pump station went through a building. In 1971 or 1972, the complex flooded, and the building collapsed.

[¶ 4] In May 2001, the City determined that the portion of the sewer line that ran from the holding tank through the collapsed building to the pump station was gone. The City opined that the sewer line had collapsed at the same time as the building in 1971 or 1972. Thus, in May 2001, the City concluded that Tucci's property was not connected to the City's sewer system. Between March 1991 and May 2001, the City did not treat any wastewater from Tucci's property. It is unclear what happened to the wastewater discharged from Tucci's property during that time period.

[¶ 5] Between July and November 2001, wastewater, which was discharged from Tucci's property to a holding tank, was pumped by a third party contractor and taken to the City's wastewater treatment plant at a cost of $37,856.00 to the City. A

sewer line was laid in early 2002 from the holding tank to the pump station.

[¶ 6] Following the discovery that his property had not been connected to the City's sewer system, Tucci unsuccessfully petitioned the City for an abatement of the $12,190.53 he had paid in sewer-use fees between March 1991 and May 2001. Tucci then filed a complaint in Superior Court, claiming that the City was unjustly enriched. Specifically, he contended that the City received and appreciated a monetary benefit by accepting the $12,190.53 in fees from him; that his property was not connected to the sewer system during the time he paid the fees; and that the City had not provided sewer services to him during that time period. Therefore, he claims that it would be inequitable for the City to retain the benefit of the fees.

[¶ 7] The City moved for summary judgment, contending that as a matter of law, Tucci could not recover the $12,190.53 because the sewer-use fees were validly assessed and not recoverable. Tucci opposed the City's motion and filed his own motion for summary judgment, arguing that the City was unjustly enriched because the fees were not properly assessed pursuant to 30–A M.R.S.A. § 3406 (1996) and Biddeford, Me., Code § 70–32.[1]

[¶ 8] The court granted the City's motion and denied Tucci's motion, finding that the sewer-use fees were validly assessed and that an equitable claim cannot be brought against a city for recovery of taxes validly assessed. Because the court

granted summary judgment in favor of the City, it did not reach the merits of the unjust enrichment claim. This appeal followed.

## II. DISCUSSION

[¶ 9] We review a ruling on a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party, to determine whether the parties' statements of material fact reveal a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. A genuine issue of material fact exists when sufficient evidence supports a factual contest requiring a fact-finder to choose between competing versions of the truth through a trial. *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. The court could have granted a summary judgment for the City only if the pleadings and statements of material fact established that there was no genuine issue of material fact, and that on the basis of those facts, the City was entitled to a judgment as a matter of law. M.R. Civ. P. 56(c).[2]

[¶ 10] The sewer-use fees were assessed by the City to Tucci's property pursuant to a Biddeford ordinance promulgated under the authority of 30–A M.R.S.A. § 3406, which provides that "the municipal officers may establish a schedule of service charges from time to time upon improved real estate connected with a municipal sewer or disposal system for the use of the

1. It is uncontested that the undated copy of the Biddeford ordinance attached to the City's statement of material facts is true and accurate and is current as of the date of the events in the case.

2. Because Tucci failed to label the facts in his statement of material facts as admitting, denying, or qualifying the City's asserted facts as required by M.R. Civ. P. 56(h)(2), we take

as material facts pertinent to this dispute the facts contained in the parties' stipulations of fact and in the City's statement of material facts. *See Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 10, 824 A.2d 48, 52. Furthermore, contrary to Tucci's contentions, the court did not abuse its discretion in considering the affidavit of the city engineer, attached to the City's statement of material facts.

system." The relevant Biddeford ordinance reads:

It is the purpose of this section to establish proportionate user charges that place the cost of abatement directly on the sources of pollution, conserve potable water, and maintain financial self-sufficiency. It is determined and declared to be necessary and conducive to the protection of the public health, safety, welfare and convenience of the city to collect charges from all users who contribute wastewater to the city's treatment works. The proceeds of such charges so derived will be used for the purpose of operating and maintaining the public waste water treatment works and providing for future needs.

Biddeford, Me., Code § 70–32(a).[3]

[¶ 11] We agree with Tucci that the court erred when it applied the reasoning in *Concerned Taxpayers v. Scarborough,* 576 A.2d 1368 (Me.1990), to the present case in determining that the sewer-use fees were validly assessed taxes. There we interpreted 30–A M.R.S.A. § 3442 (1989), a statute not at issue here. *Concerned Taxpayers,* 576 A.2d at 1369–70.

[¶ 12] We review the interpretation of a statute de novo. *State v. Raymond,* 1999 ME 126, ¶ 6, 737 A.2d 554, 555. In interpreting section 3406, we look to the plain meaning of the provisions to determine the Legislature's intent. *Brent Leasing Co. v. State Tax Assessor,* 2001 ME 90, ¶ 6, 773 A.2d 457, 459. The plain language of section 3406 states that a municipality may establish a schedule of service charges against real estate that is "connected with a municipal sewer … system for the use of the system." 30–A M.R.S.A. § 3406. Likewise, the Biddeford

ordinance plainly states that its purpose is "to collect charges from all users who contribute wastewater to the city's treatment works." Biddeford, Me., Code § 70–32(a).

[¶ 13] Taken in the light most favorable to Tucci, the facts establish that he was not connected to the City's sewer system from May 1995 to May 2001. We agree with Tucci's contention that because his property was not connected to the sewer system during the time in question, the fees charged to him for services ostensibly rendered during that time period were invalid and unauthorized. Only properties that are in fact connected to the City's sewer system can be lawfully assessed sewer-use fees pursuant to the plain language of section 3406 and the Biddeford ordinance. The court erred by granting summary judgment to the City on the grounds that the fees were lawfully assessed.

[¶ 14] Tucci's claim for unjust enrichment is not barred merely because the defendant is a municipality. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 106 (Me.1994). In a claim for unjust enrichment, a claimant must establish that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *Forrest Assocs. v. Passamaquoddy Tribe,* 2000 ME 195, ¶ 14, 760 A.2d 1041, 1045–46.

[¶ 15] Because its motion for summary judgment was based only on its view that the sewer-use fees were validly as-

---

3. The ordinance further provides that "[e]ach user shall pay for the services provided by the city based on his use of the treatment works as determined by his water consumption according to methods recommended by the environmental specialist." Biddeford, Me., Code § 70–32(d)(1).

sessed and nonrecoverable, the City did not argue in the trial court that it was not unjustly enriched. On appeal, the City does not dispute that it received and retained the fees paid by Tucci when his property was not connected to the City's sewer system. Rather, the City argues that its retention of those fees would not be inequitable in light of the $37,856 it later spent to treat wastewater from the complex.

[¶ 16] When determining whether a municipality should be liable for the receipt and retention of a benefit, the court may consider all the relevant circumstances. *A.F.A.B., Inc.*, 639 A.2d at 106 n. 4. The summary judgment record demonstrates that genuine issues of material fact as to the elements of unjust enrichment may exist. For example, the facts do not indicate whether the wastewater pumped by the third-party contractor from July to November of 2001 contained any wastewater that had been earlier deposited in the tank from Tucci's property between May 1995 and May 2001. In light of the fact that the trial court did not reach the issue of unjust enrichment, we remand to the court to allow the parties a full opportunity to present this issue.

[¶ 17] On remand, the court will have to determine whether a benefit was in fact conferred upon the City and appreciated by it, and whether, under the circumstances of this case, it would be inequitable for the City to retain the improperly assessed sewer-use fees paid by Tucci.

The entry is:

Judgment vacated and remanded to the Superior Court for further proceedings consistent with this opinion.