STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss.                                  CIVIL ACTION
                                                 DOCKET NO: CV-08-571
                                                 ꞋRAC - Cum-1/6/2009

MARK BARRIAULT

and

NEVENS, L.L.C.

                    Plaintiffs
                                                 ORDER

        v.

NEIL JAMIESON, JR.

and

PRESCOTT, JAMIESON, NELSON
& MURPHY, L.L.C.

                    Defendants

        This case comes before the Court on Defendants' motion to dismiss

pursuant to M.R. Civ. P. 12(b)(6).

                            BACKGROUND

        In November 1986, Plaintiff Mark Barriault entered into a land contract

with Joseph and Lorraine Joy to purchase property located at 23 Nevens Street in

Portland, Maine. Under the agreement, Mr. Barriault's payments for the property

were to be made over the course of five years with the final payment being on

November 1, 1991. The contract was subject to an outstanding mortgage that the

Joy's had with Knutson Mortgage Company (Knutson).

In 1988, the Joys initiated a divorce action, and Lorraine Joy retained Defendant Neil Jamieson of the firm Potter & Prescott to represent her.[1] Some time in early 1991, Jamieson commenced a disclosure proceeding in Biddeford District Court in an effort to collect funds owed to his firm through his representation of Ms. Joy. On April 24, 1991, to satisfy the debt owed by Ms. Joy, Jamieson obtained an order requiring Mr. Barriault to pay the money he owed to Ms. Joy under their land contract directly to Potter & Prescott.

In November 1991, the Joys and Mr. Barriault amended their agreement to extend the due date of the final payment by fours years. Under the amended agreement, Mr. Barriault was to continue paying the Joy's first mortgage obligation to Knutsen and was to pay a new figure of $436.56 each month directly to Ms. Joy.

As amending the property agreement violated the April 24, 1991 Order requiring Mr. Barriault to pay all amounts owed under the agreement directly to Defendants, the matter was set for hearing. On December 4, 1991, the District Court (Biddeford, *Saufley, J.*) issued an agreed-to-order ("Lien Order").[2] Under the Lien Order, Mr. Barriault was to pay Defendants $2,000.00 by certified check on December 9, 1991 and monthly payments of $436.56 beginning on December 14, 1991 for six months, with a final payment of $1,390.75.

The Lien Order gave Defendants a lien on the Nevens Street property until such time as Mr. Barriault satisfied his obligations under the Lien Order. Moreover, under the Lien Order, Defendants were to schedule a contempt

---

[1] Potter, Prescott, Jamieson & Nelson, P.A. is the successor-in-interest to Potter & Prescott.
[2] The Lien Order was recorded in the Cumberland County Registry of Deeds.

hearing in the event that Mr. Barriault failed to make payments as required. Mr. Barriault alleges that he made all the payments that were required of him under the Lien Order, and that at no time did Defendants initiate contempt proceedings against him.

On November 29, 1995, Ms. Joy and the Defendants went to fee arbitration, and after the fee owed to Defendants was substantially reduced, Ms. Joy paid it off in full. On this same date, based on Ms. Joy's complete payment, Dana Prescott, an attorney with Potter & Prescott, signed a Release of Attachment stating that his firm "acknowledge[d] full payment and satisfaction of a certain Attachment granted December 4, 1991 by the Biddeford District Court and hereby release and discharge a Lien Order recorded in the Cumberland County Registry of Deeds."[3]

On December 28, 1995, Mr. Barriault and Ms. Joy again amended their land contract. Under this amended agreement, Ms. Joy accepted a discounted final payment on the money owed to her and the parties agreed to extend the time in which Mr. Barriault would make the mortgage payments to Knutsen. On January 29, 1998, Mr. Barriault completed his purchase of the Joy property through a refinancing agreement with Peoples Heritage Bank (Peoples); the loan he received after refinancing the property allowed him to pay off the entire balance of the Joy's mortgage still owed to Knutsen. The loan with Peoples was closed by Cumberland Title Company, and it is alleged that, at this point, no one believed that any sum of money was still owed to Potter & Prescott by ether Ms. Joy or Mr. Barriault, or that the Lien Order was still in effect.

---

[3] The order referred to by Defendants in this release is Judge Saufley's December 4, 1991 Lien Order.

3

In late April 2008, Mr. Barriault decided to refinance the Nevens Street property through TD Banknorth in an effort to purchase a two-family apartment building that was at that time owned by the bank. Mr. Barriault paid an $18,000 non-refundable deposit on the apartment building, anticipating that after his refinancing application was approved, he would have the funds to fully purchase the property.

At this point, when Maine Title Company conducted a title search of the Nevens Street property, it was suggested that the Lien Order might still be in effect. When asked by Maine Title about the lien, Mr. Barriault advised that the money previously owed to Potter & Prescott was paid off and the lien was discharged.

However, when Maine Title contacted Defendant Jamieson to further investigate the possible lien issue, Mr. Jamieson informed Maine Title that Mr. Barriault still owed the Defendants $10,000, and that the lien was still in effect.[4] Mr. Jamieson also made the same statements to Mr. Barriault when Mr. Barriault contacted him directly concerning the lien, further informing Mr. Barriault that he needed to "come up with proof" showing that the debt had been paid off. Mr. Barriault suggests that, because the proof sought is over 16 years old, he cannot provide it.

Mr. Barriault, knowing that he would be unable to refinance the Nevens Street property because the Defendants' claim clouded his title to the property, and knowing that if he did not refinance the Nevens Street property he would be

---

[4] Allegedly, Mr. Jamieson informed Maine Title that this amount ($10,000) was arrived at because the Defendants had reduced the money owed them to "a flat fee."

4

unable to raise enough money to purchase the two-family apartment building, thus forcing him to lose his non-refundable $18,000 deposit place on that property, agreed to pay, under protest, the amount claimed to be owed to the Defendants. On May 22, 2008, after receiving the money, Mr. Jamieson executed a "Release of Lien," which acknowledged Mr. Barriault's payment. [5]

## DISCUSSION

### I.  Standard of Review

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. Because the Court reviews the complaint in the light most favorable to the plaintiff to ascertain whether it properly sets forth elements of a cause of action, "the material allegations of the complaint must be taken as admitted." *Id.* ¶ 5, 707 A.2d at 85. "We determine whether the complaint 'sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Doe v. District Attorney*, 2007 ME 139, ¶ 20, 932 A.2d 552, 558 (quoting *Persson v. Dep't. of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363, 365). Dismissal is warranted only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts" that might be proved in support of the claim. *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246.

---

[5] In early July, Mr. Barriault's counsel, John Campbell, asked Mr. Jamieson to provide any records that would prove that there had been an outstanding balance owed on the lien up until May 22, 2008, and for an "explanation as to why his firm had signed the 1995 'Release of Attachment' which explicitly references Judge Saufley's Lien Order." In his written response, Mr. Jamieson did not address the record request, but suggested that the 1995 release was issued to Lorraine Joy, not to Mr. Barriault.

II.     Statute of Limitations

Whether a claim is bared by the statute of limitations is usually a question of law. *Francis v Stinson*, 2000 ME 173, ¶ 56, 760 A.2d 209, 220. Under 14 M.R.S. §752, "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards." Accrual occurs, "at the time a plaintiff sustains a judicially cognizable injury." *Dugan v. Mortel*, 588 A.2d 744, 746 (Me. 1991).

Defendants argue that this action is barred by the statute of limitations. They points out that Mr. Barriault's complaint contains four operative dates: (1) December 4, 1991, the date of the Lien Order; (2) January 29, 1992, the date the Lien Order was recorded in the Registry of Deeds; (3) 1992, the year of the second amended agreement between Mr. Barriault and Ms. Joy; and (4) January 29, 1998, the date Mr. Barriault completed his purchase of the Nevens Street property.[6] Because none of these dates are within six years of the time this complaint was filed, Defendants argues that this action is time barred.

However, Defendants forget that the causes of action that serve as a basis for the Complaint all stem from the act of Mr. Jamison representing to Maine Title that the lien was still in effect, and that Mr. Barriault still owed Defendants $10,000. As this incident occurred in April or May of 2008, the case should not be dismissed as being time barred.

III.    *Count I, Slander of Title*

In order to prove slander of title, one must show "1) there was a publication of a slanderous statement disparaging claimant's title; 2) the

---

[6] In the complaint, Mr. Barriault alleges that his purchase of the Nevens Street property occured on January 28, 1998, not January 29, 1998.

6

statement was false; 3) the statement was made with malice or made with reckless disregard of its falsity; and 4) the statement caused actual or special damages." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). A complaint alleging slander of title must conform to M.R. Civ. P. 9(g), which requires that special damages be "specifically stated."

Here, the Defendants argue that the elements of slander of title have not been met. They argue that, because the "judicial lien that was recorded was valid on its face and a public document recorded in the Registry of Deeds," and because the recorded document was not false, that the claim is barred as a matter of law. Defendants misconstrue Mr. Barriault's argument. It is not the recording of the lien, but rather Mr. Jamieson's alleged false representation to Maine Title that the lien was still in effect, that serves as the basis for this count.

The Complaint meets all four elements of slander of title. Mr. Barriault claims that Defendants clouded his title to the Nevens Street property. Specifically, he alleges that Mr. Jamieson published the false slanderous statement that money was still owed under a lien on the Nevens Street property. Further, it is alleged that, because Mr. Jamison knew that the Lien Order was discharged on November 29, 1995, his statement to Maine Title that Mr. Barriault still owed money to the Defendants under the Lien Order, was made with malice or reckless disregard of the statement's falsity. The damages are also, as required, specifically stated. Mr. Jamieson's statement, it is alleged, forced Mr. Barriault's to pay more than $10,000, time, and effort to clear this alleged false cloud from the Nevens Street property.

As Mr. Barriault has met all the elements of slander of title, Count I should not be dismissed for failing to state a claim.

7

IV.    *Count II, Tortious Interference with Contract or Advantageous Relations*

"Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, P13, 798 A.2d 1104, 1110.

Count II of the Complaint meets all of the required elements. Mr. Barriault wished to refinance the Nevens Street property in order to purchase an apartment building that he had already put a non-refundable deposit on. Mr. Jamieson's alleged false statements regarding the lien interfered with Mr. Barriault's attempt to get refinancing, and as a result, Mr. Barriault had to pay $10,000 to cure his title, or risk being rejected for refinancing by TD Banknorth and losing his $18,000 deposit and the chance to purchase the two-family apartment building. As all the elements of the tort of interference have been met, Count II should not be dismissed for failing to state a claim.

V.    *Count III, Negligent Infliction of Emotional Distress*

In a negligent infliction of emotional distress (NIED) claim, a plaintiff must allege that (1) the Defendants owed a duty to the Plaintiff; (2) the Defendants breached its duty; (3) the Plaintiff suffered severe emotional distress; and (4) the Defendants' breach caused the Plaintiff's severe emotional distress. See *Curtis v. Porter*, 2001 ME 158, ¶¶18, 20, 784 A.2d 18, 25. Because there is no general duty to avoid negligently causing emotional harm to others, the Law Court has recognized such a duty in bystander liability actions, in cases where a special relationship exists between the parties, and in circumstances where the defendant has committed another tort. *Id.* ¶¶18, 19, 784 A.2d at 25. There is no

8

bar to recovery for negligent infliction of emotional distress in a commercial setting. See *Herbert v. International Paper Co.*, 638 A.2d 1161 (Me. 1994).

Here, Mr. Barriault alleges that Defendants wrongfully demanded money they knew was not owed to them, that such a demand constituted an act that "ordinary, careful people or businesses would not take," and that the demand caused him severe emotional distress. As discussed before, while there is no general duty to avoid negligently causing emotional harm to others, here the NIED count rests on the fact that the Defendants also allegedly committed the torts of slander of title, tortuous interference with contract or advantageous relations, intentional infliction of emotional distress, and abuse of process. Therefore, because the Law Court has recognized a duty to avoid negligently causing emotional harm to others in circumstances where the defendants have committed other torts, and it is alleged here that the defendants did, in fact, commit torts other than NIED, Count III should not be dismissed for failing to state a claim.

VI.     *Count IV, Intentional Infliction of Emotional Distress*

In order to prevail in an action for intentional infliction of emotional distress (IIED), a party must prove that

> (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct. *Curtis v. Porter*, 2001 ME 158, ¶10, 784 A.2d 18, 22-23.

Serious emotional distress means emotional distress, "created by the circumstances of the event, that is so severe that no reasonable person could be

9

expected to endure it." *Id.* Moreover, "in appropriate cases, 'severe' emotional distress may be inferred from the 'extreme and outrageous' nature of the defendant's conduct alone." *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me. 1979)(quoting Restatement (Second) of Torts § 46, Comment k)).

"In the context of an IIED claim, 'it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so.'" *Champagne v. Mid-Maine Medical Center,* 1998 ME 87, ¶16, 711 A.2d 842, 847 (quoting *Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 699 (Me. 1986)). Therefore, while it is ultimately up to the fact-finder to determine whether the elements of the tort were in fact satisfied, "the court must first determine whether, as a matter of law, the facts alleged are sufficient to satisfy the elements." *Id.* (citing *Colford v. Chubb Life Ins. Co. of Am.,* 687 A.2d 609, 616 (Me. 1996)).

Defendants argue that, as this case relates to a contract and/or a money dispute, that emotional distress damages are inappropriate.[7] Conversely, Mr. Barriault argues that this is not a contract case, but rather a tort case, and current Maine law does not preclude emotional distress damages under the circumstances present here.

Mr. Barriault allegations are sufficient to withstand a motion to dismiss. Mr. Barriault has alleged that Defendants engaged in intentional or reckless conduct that inflicted severe emotional distress, and that the conduct was extreme and outrageous. Therefore, at this point, this Court cannot say beyond

---

[7] To support their argument, Defendants cite to *Rubin v. Matthews International Corp.,* 503 A.2d 694, 696 (Me. 1986)("[a]s a general rule, courts in other jurisdictions have denied recovery for mental or emotional distress suffered as a result of breach of contract unaccompanied by physical injury.").

10

doubt that the Mr. Barriault is not entitled to any relief under any set of facts they might prove in support of Count IV. As such, dismissal of Mr. Barriault's IIED claim should not be dismissed for failing to state a claim.

VII.   *Counts V, Negligent Misrepresentation*

In *Chapman v. Rideout*, the Law Court adopted the Restatement (Second) of Torts' definition of negligent representation. 568 A.2d 829, 830 (Me. 1990). The Restatement defines negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Restatement (Second) of Torts § 552(1) (1977). 568 A.2d at 830.

Here, while it is alleged that, during the course of his employment, Mr. Jamieson supplied false information to Maine Title, this alone is not sufficient to support a claim of negligent misrepresentation. In order to defeat a motion to dismiss this count, Mr. Barriault must show that he "justifiably relied" on the alleged false information provided by Mr. Jamieson. He has failed to do this.

While Mr. Barriault alleges that he was forced to pay Defendants $10,000 or risk losing an opportunity to purchase an apartment building, he also alleges that he did so "under protest" because he believed that no money was still owed on the lien. Put another way, Mr. Barriault believed the information Mr. Jamieson was providing was false, and therefore, was not justified in relying on it.

Further, liability under a theory of negligent representation is limited to losses suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. Restatement (Second) of Torts, § 552(2).

Mr. Jamieson provided the alleged false information to Maine Title so that Maine Title could supply that information to TD Banknorth, which in turn, would use that information to help guide its decision on Mr. Barriault's refinancing application. Because the information provided was ultimately intended to guide TD Banknorth, and not Mr. Barriault, liability is limited to losses suffered by TD Banknorth, a non-party to this suit.

Therefore, based on the Complaint, because it was not reasonable for Mr. Barriault to rely on Mr. Jamieson's representation, and because the liability is limited to certain losses not present in this action, Count V, alleging negligent misrepresentation, should be dismissed.

VIII.   *Count VI, Unjust Enrichment*

In a claim for unjust enrichment, one must establish that (1) he conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for the other party to retain the benefit without payment of its value. *Tucci v. City of Biddeford*, 2005 ME 7, ¶ 14, 864 A.2d 185, 189.

Here, Mr. Barriault alleges that the $10,000 he paid to the Defendants was money that was not actually owed to the Defendants. The fact that, after receiving the $10,000 from Mr. Barriault, Defendants executed a "Release of

12

Lien" evidences Defendants' appreciation or knowledge of the benefit conferred on them. Finally, it is alleged that, because no money was owed to Defendants at the time Mr. Barriault made the $10,000 payment, that it is inequitable for them to retain that amount. Therefore, Count VI, alleging unjust enrichment, should not be dismissed for failing to state a claim.

## IX. Count VII, Abuse of Process

In order to prove abuse of process, one must show (1) "the use of process in a manner improper in the regular conduct of the proceeding," and (2) "the existence of an ulterior motive." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 7, 708 A.2d 283, 286. In the past, abuse of process has been found when there was a "misuse of the procedures for obtaining a lien. See *Kleinschmidt v. Morrow*, 642 A.2d 161, 164 (Me. 1994). There, the Law Court affirmed an award of compensatory damages for abuse of process based on the facts that a lien statement "grossly misstated material facts as to the amount" owed, *Id.*, and the drafter of the lien statement was using the lien process as a means to secure payment to which he was not entitled. *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 24, 901 A.2d 189, 198 (discussing *Kleinschmidt*, 642 A.2d 161).

Here, the basis of this cause of action is not that the actual Lien Order was grossly misstated, but rather, it is alleged that Mr. Jamieson invoked a lien that he knew was no longer effect in order to secure a payment that he was not entitled to. As it alleged that Mr. Jamieson improperly invoked a lien that was not in effect in order to get $10,000 from Mr. Barriault, Count VII does not fail to state a claim, and as such, should not be dismissed.

13

X:     *Count VIII, Punitive Damages*

The Law Court has held that punitive damages are recoverable under Maine Law only upon a showing of malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).

> This requirement of malice can be satisfied by a showing of
>
> express or actual malice. Such malice exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff. Punitive damages will also be available, however, where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied. We emphasize that, for the purpose of assessing punitive damages, such implied or legal malice will not be established by the defendant's mere reckless disregard of the circumstances.

*Id.* (citations and internal quotations omitted). In addition, the Law Court has held that a punitive damages award must be based upon underlying tortious conduct. *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me. 1993).

As the complaint alleges that that Defendants' actions were so outrageous as to imply malice, Count VIII, seeking punitive damages, does not fail to state a claim upon which relief can be granted. Therefore, dismissal is inappropriate.

**Therefore**, the entry is:

> Defendants' Motion to Dismiss, as it relates to Counts I, II, III, IV, VI, VII, and VIII is **DENIED**.
>
> Defendants' Motion to Dismiss, as it relates to Count V, is **GRANTED**.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:     January 6, 2009

Roland A. Cole
Justice, Superior Court

14

OF COURTS
rland County
. Box 287
laine 04112-0287

DANA PRESCOTT ESQ
PO BOX 1190
SACO ME 04072



)F COURTS
and County
Box 287
ine 04112-0287

JOHN CAMPBELL ESQ
PO BOX 369
PORTLAND ME 04112

