Entered on the Docket: 8·19·11
Copies sent via Mail __ Electronically ✓

STATE OF MAINE                        BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                       Location:    Portland
                                      Docket No.  BCD-WB-CV-10-52

JAMES SLEEPER,

        Plaintiff,

v.                                    **DECISION AND JUDGMENT**

JOHN RIVERS, JR., and CHERI
RIVERS,

        Defendants

This Court conducted a jury-waived trial on Plaintiff James Sleeper's Amended Complaint and Defendants John Rivers, Jr. and Cheri Rivers's Counterclaim on June 7, 2011. Attorneys Jason Jabar and James Laliberty represented the Plaintiff. Attorney Ronald Cullenberg represented the Defendants. Following the hearing, the parties filed written argument. The Court received the final submission on July 20, 2011.

Findings of Fact

Based on the evidence, the Court makes the following findings of fact:

1.      In early 2008, Defendants leased a building in Stratton, Maine, in which building they intended to operate a restaurant.

2.      After making some renovations to the building, Defendants named the restaurant the Rivers Edge Grill, and prepared to open for business.

3.      Plaintiff's wife, Jennifer, had previously worked as a waitress at a nearby restaurant, the White Wolf, with Defendant Cheri Rivers.

4.   Plaintiff met Defendant John Rivers in connection with Defendant John Rivers's work as a subcontractor on a job at Plaintiff's home.

5.   Prior to the opening of the restaurant, Plaintiff and his wife helped paint portions of the interior of the restaurant.

6.   At or about the time of the opening of the restaurant, Defendant Cheri Rivers informed Plaintiff's wife, Jennifer, that Defendants were in need of money for a food purchase for the restaurant. On March 1, 2008, Jennifer Sleeper loaned Defendants $2000 through a check, on which only Jennifer Sleeper's name appeared, made payable to U.S. Food Service.

7.   Before the restaurant opened, Plaintiff agreed to work as a cook at the restaurant. The parties did not discuss compensation terms. At least for the first few weeks, Plaintiff did not expect payment as he considered it to be an opportunity to learn a new skill.

8.   When the restaurant opened, Plaintiff served as the breakfast cook, and his wife worked as a waitress at the restaurant.

9.   In April 2008, because the business had encountered some cash flow problems, Defendant John Rivers asked Plaintiff whether he would be willing to advance some funds to the restaurant. As part of the discussion, Defendant John Rivers represented to Plaintiff that the Defendants had invested a total of $14,000 in the restaurant in the form of money and labor.

10.   During the discussion, Plaintiff proposed that he provide an additional $5,000, which when added to the $2,000 advanced by his wife, would total a one-third interest in the restaurant with Defendants. Defendant John Rivers agreed that with the payment of $5,000, the parties would become partners in the business. On April 4, 2008, Plaintiff transferred $5,000 from his bank account to the Rivers Edge Grill bank account.

2

11. Defendant Cherie Rivers was not a party to the conversation between Plaintiff and Defendant John Rivers regarding a shared interest or partnership in the business.

12. The parties did not discuss any specific business terms, nor did they memorialize any agreement in writing.

13. Plaintiff was never authorized to use the business checking account and was not a signatory to the lease for the premises on which the business operated.

14. After Plaintiff transferred the $5,000 to the business account, Defendants used funds in the business account to pay various personal expenses. Throughout the remaining existence of the business, Defendants continued the practice of paying personal obligations from the business account.

15. Defendant John Rivers did not involve Plaintiff in most of the management decisions regarding the operation of the restaurant.

16. Plaintiff served as a cook at the restaurant from March 17, 2008 through August 3, 2008. Plaintiff did not receive any compensation for the work that he performed as a cook. Plaintiff also devoted time each week to monitoring and documenting the receipts and expenses of the business.

17. In early August 2008, Plaintiff and Defendant John Rivers had a disagreement about a business-related issue. As the result of the disagreement, Defendant John Rivers ordered Plaintiff to leave the property, and not to return to the property. Subsequently, the police instructed Plaintiff not to return to the property.

18. After the disagreement, Plaintiff did not work again at the restaurant. Soon thereafter, the business closed.

3

19.     Based on U.S. Department of Labor wage statistics, the average wage for a cook in Maine is $11 per hour.  Plaintiff worked 831.5 hours as a cook at the restaurant.

20.     Defendants arranged for the preparation of a 2008 tax return for the business.  The tax return reflects a $26,644 loss for the business.

Discussion

Plaintiff asserts several theories in his attempt to recover the money that he advanced to Defendants, and the value of his wages.[1]  In their counterclaim and in response to Plaintiff's claims, Defendants maintain that the parties formed a partnership and, therefore, Plaintiff is not entitled to a recovery.  To the contrary, Defendants contend that Plaintiff is obligated to pay Defendants for Plaintiff's share of the outstanding costs associated with the restaurant.[2]

The preliminary issue is whether the parties were engaged in a partnership in the operation of the restaurant. Title 31 M.R.S. § 1022 (2010) provides that "the association of 2 or more persons to carry on as co-owners a business for profit forms a partnership . . . ." Here, Defendants maintain that based upon a conversation between Plaintiff and Defendant John Rivers, the parties formed a three-person partnership at the time Plaintiff contributed $5,000 to the business. Although Plaintiff believed that he became a partner in the business at the time of the payment, the parties in fact did not form a partnership.

First, the record contains no reliable evidence to establish that Defendant Cheri Rivers ever agreed to form or acknowledged the existence of a partnership that included the three parties.  Not insignificantly, she was not a party to the conversation in which Plaintiff and Defendant John Rivers discussed the formation of the partnership.  In addition, Defendant John

---

[1] In his Amended Complaint, Plaintiff asserted claims against both Defendants for breach of contract, violation of 26 M.R.S. § 626 (2010), unjust enrichment, fraud, promissory estoppel, and quantum meruit.
[2] In addition to their claim that Plaintiff did not satisfy his obligation to act in good faith as a partner in the business, Defendants also alleged a claim for tortious interference with an advantageous economic relationship.

4

Rivers did not operate the business consistent with the existence of a partnership. "[T]he right to participate in control of the business is the essence of co-ownership." *John Nagle Co. v. Gokey*, 2002 ME 101, ¶ 5, 799 A.2d 1225, 1227 (quoting *Dalton v. Austin*, 432 A.2d 774, 777 (Me. 1981)). Defendant John Rivers exercised complete control over the operation of the business and did not involve Plaintiff in the major business-related decisions. Plaintiff never had the authority to act as a co-owner of the business, and was never viewed by Defendant John Rivers to be an equal owner of the business. The extent of Defendant John Rivers's control was evident when he ordered Plaintiff to leave the restaurant following a disagreement with him. Defendants' contention that the parties formed a legal partnership thus fails.

Plaintiff argues that because the parties did not form a partnership, and because Plaintiff was not an independent contractor, Plaintiff was necessarily an employee of the business and, consequently, entitled to wages and other damages available under 26 M.R.S. § 626 (2010). Contrary to Plaintiff's argument, there are a number of instances in which a person might perform services for another without creating an employer-employee relationship. For instance, a person might wish to volunteer because of personal relationship, might work to gain training or experience in a particular field, or might wish to contribute to a particular cause. In fact, in this case, Plaintiff acknowledges that at least at the start, he worked without any expectation that he would be compensated for his time. Simply stated, the record lacks any objective indicia of an employer-employee relationship or any persuasive evidence to suggest that Plaintiff or the Defendants considered their relationship to be one between an employer and employee. Indeed, during the time that he worked at the restaurant, Plaintiff never requested or demanded payment of wages. Under these circumstances, the Court cannot conclude that an employer-employee relationship existed such that Plaintiff is entitled to wages and damages under Title 26. In the

5

absence of an employer-employee relationship or a partnership agreement between Plaintiff and the Defendants, Plaintiff's claim for breach of contract fails for want of a contract or agreement.

In addition to his statutory claim, Plaintiff seeks to recover on the basis of promissory estoppel. In *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, 734 A.2d 667, the Law Court reiterated that Maine has

adopted the Restatement formulation of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Id.* ¶ 14, 734 A.2d at 672 (quoting Restatement (Second) of Contracts § 90(1) (1981)). In this case, Defendant John Rivers represented to Plaintiff that upon Plaintiff's contribution of $5,000, Plaintiff would become a partner in the operation of the restaurant. Although Defendant now contends that he delivered on that representation, his actions prove otherwise. Defendant John Rivers never involved Plaintiff in the management of the business in any meaningful way. Rather, Defendant continued to manage the business just as he had before he accepted Plaintiff's $5,000 investment. That is, he operated the business as though he was the sole owner, without involving Plaintiff in any of the management decisions. Further demonstrating that he did not consider Plaintiff to be a partner in the business, Defendant John Rivers, without consulting Plaintiff, used the business account for Defendant's personal benefit, and when a disagreement with Plaintiff arose, Defendant believed that he had the authority to order Plaintiff's removal from the premises on which the business was operated.

In sum, the evidence established that Defendant John Rivers represented to Plaintiff that he would become a partner in the business upon the payment of $5,000, that Defendant made the

statement in order to induce Plaintiff to invest $5,000 in the business, that Plaintiff invested $5,000 in the business and worked in the business without pay, and that Defendant did not operate the business as a partnership. Defendant John Rivers is, therefore, legally responsible to Plaintiff under a theory of promissory estoppel.[3]

As to damages,

> the same factors which bear on whether any relief should be granted also bear on the character and the extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise. *Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the promise would have put him.* In the case of a promise to make a gift it would rarely be proper to award consequential damages which would place a greater burden on the promisor than performance would have imposed.

Restatement (Second) of Contracts § 90 cmt. d (1981) (emphasis added) (citations omitted) (quoted in *Harvey v. Dow*, 2011 ME 4, ¶ 12, 11 A.3d 303, 308).

In this case, Plaintiff is clearly entitled to recover the $5,000 that he invested in the business in reliance on Defendant's promise that Plaintiff would become a partner in the business.[4] The issue is whether Plaintiff is entitled to recover any additional damages. To award Plaintiff damages for his share of any potential profits of the business had Defendant John Rivers operated the restaurant as a partnership with Plaintiff would require the Court to speculate impermissibly. As mentioned above, however, the Court can award additional damages in the event there is "unjust enrichment to the promisor." *Id.*

---

[3] Because Defendant Cheri Rivers did not participate in the conversations in which Defendant John Rivers made the statements upon which Plaintiff relied, and because the record contains no evidence that Defendant Cheri Rivers made any similar statements to Plaintiff, Defendant Cheri Rivers is not liable under a promissory estoppel theory.

[4] Plaintiff seeks recovery of the $2,000 that Plaintiff's wife advanced to the business. While Plaintiff testified that the funds were drawn from an account to which he was a party, Plaintiff was not a party to that transaction and, therefore, Plaintiff is not entitled to recover the $2,000 paid by his wife.

7

"Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 19, 759 A.2d 217, 224 (quotations marks and emphasis omitted). To make out a claim for unjust enrichment,

> a claimant must establish that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.

*Tucci v. City of Biddeford*, 2005 ME 7, ¶ 14, 864 A.2d 185, 189 (quoted in *Me. Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 26, 890 A.2d 707, 712). A contemporaneous understanding that compensation is anticipated for the services being rendered is not a necessary element. *Siciliani v. Connolly*, 651 A.2d 386, 387 (Me. 1994). "The most significant element of the doctrine [of unjust enrichment] is whether the enrichment of the defendant is unjust." *Howard & Bowie, P.A. v. Collins*, 2000 ME 148, ¶ 14, 759 A.2d 709, 710 (quotation marks omitted).

Here, Plaintiff worked as a cook for several weeks without compensation. Insofar as Defendant John Rivers would have otherwise had to hire and pay another person to serve as cook, Defendant unquestionably was aware of Plaintiff's work and the benefit that Plaintiff provided. Because Defendant induced Plaintiff to continue to work without compensation, and particularly where Defendant John Rivers used for his personal benefit money that was generated partly by Plaintiff's efforts, the circumstances of this case are such that it would be inequitable for Defendant John Rivers to retain the benefit of Plaintiff's services without payment.

Plaintiff is, therefore, entitled to recover damages for the benefit conferred, which is the amount that Defendant John Rivers otherwise would have had to pay for the services of a cook. The evidence of the hours that Plaintiff worked (831.5), and the average hourly wage for a cook

in Maine ($11) was undisputed. Defendant John Rivers is thus obligated to pay Plaintiff the sum of $9,146.50 (831.5 x 11) in additional damages.[5]

Conclusion

Based on the foregoing analysis, the Court orders:

1. On Counts III and IV of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendant John Rivers in the amount of $14,146.50 together with interest and costs. The Court enters judgment in favor of Defendant John Rivers on the remaining counts of Plaintiff's Complaint.[6]

2. On Plaintiff's Complaint, the Court enters judgment in favor of Defendant Cheri Rivers.[7]

3. On Defendants' Counterclaim, the Court enters judgment in favor of Plaintiff.[8]

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Judgment into the docket by reference.

Date: 3/18/11

Justice, Maine Business & Consumer Court

---

[5] As mentioned above, Plaintiff has also asserted a separate claim for unjust enrichment. Given the Court's unjust enrichment analysis, Plaintiff is entitled to recover against Defendant John Rivers on both Count III (unjust enrichment) and Count IV (promissory estoppel) of the Amended Complaint.

[6] The Court enters judgment in favor of Plaintiff and against Defendant John Rivers on Plaintiff's claims for promissory estoppel and unjust enrichment. Because the Plaintiff failed to establish (a) that he was the Defendants' employee, (b) that Defendant John Rivers recklessly made his representation about the partnership or that he knew it was false at the time the statement was made, or (c) that the parties formed a binding contract, either explicit or implied, Plaintiff cannot prevail on his statutory, fraud, or contract-related claims, including both breach of contract and quantum meruit.

[7] Although Defendants John Rivers and Cheri Rivers opened the business together, the persuasive evidence established that Defendant John Rivers not only managed and controlled the business, but also was responsible for all of the material representations made to Plaintiff. Accordingly, Plaintiff cannot prevail on his claims against Defendant Cheri Rivers.

[8] Because the Court concluded that the parties did not form a partnership, Defendants cannot prevail on Counts I (partnership) and II (breach of duty of care) of their counterclaim. In addition, Defendants failed to present any reliable evidence to establish that Plaintiff's conduct, rather than Defendants' management practices, including the use of the business account for personal expenses and Defendants' decision not to search for another cook, caused the loss of the business.

9