STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.


TAMMY LEE individually and
on behalf of LEE COMMUNICATIONS, INC.

                    Plaintiff

        v.                                    Docket No. PORSC-CV-15-149

RICHARD H. LUGG

                    Defendant


## DECISION AND JUDGMENT

This case came before the court for trial April 18, 2017. Plaintiff Tammy Lee represented herself and Defendant Richard Lugg was represented by John Branson, Esq. Both parties presented their own testimony and offered exhibits into evidence.

At the close of the Plaintiff's case-in-chief, Defendant Lugg made an oral motion for judgment that the court took under advisement. For the reasons set forth below, the motion is hereby denied.

Based on the entire record, the court hereby makes and adopts the following findings of fact and conclusions of law and renders judgment as set forth below.

1. Plaintiff Tammy Lee is a former resident of Maine and current resident of California who has worked since 1999 as a public relations and communications professional, and has an extensive history of working on significant projects for major clients. In 2003, she moved to Maine, and in 2004, she incorporated her business by forming a Maine corporation called Lee Communications, Inc. Although the business had several employees during the early 2000's, Ms. Lee herself was the principal employee as of 2008. In that year, she went through a

1

divorce and was in the process of selling the oceanfront home she and her former husband had built.

2. Defendant Richard H. Lugg is a resident of Maine with experience in the aviation industry. At all pertinent times, Mr. Lugg has been chief executive officer of a Delaware corporation called SonicBlue Aerospace, Inc. [SonicBlue].

3. Since at least 2008, Mr. Lugg's focus through SonicBlue has been on promoting the development of a high-efficiency hybrid jet engine, and specifically on raising capital from various sources to fund the project. At some point during or before 2008, SonicBlue was awarded a Maine Technology grant and Mr. Lugg began recruiting a group of professionals in various fields to move the project forward.

4. Mr. Lugg's vision for SonicBlue was grand, if not grandiose. In an e-mail message, Mr. Lugg described SonicBlue as

> a company that is going to bring a sea change to the aerospace propulsion industry with an engine (we do not have to know exactly what type, class size, etc.) . . . but we must express the picture to the world, and specifically investors, that we are the innovators, that we have the core technologies to do it (superconducting, magnetic bearings, electric segmentation, electric Brayton cycle) and most importantly we have the Team (or the very beginnings of a Team) . . . we are really founding the dream Team. We are going to build ourselves up over time as we raise the capital to be the experts we need to be to get the job done.

Plaintiff's Ex. 2 (e-mail message Richard Lugg to Tammy Lee (Dec. 7. 2008)).

5. As the quoted message suggests, SonicBlue's emphasis in 2008 was on raising capital for its project, which existed only in concept as a "new, next generation subsonic, transonic, supersonic and/or hypersonic hybrid jet-electric turbine engine design and prototype." *See* Defendant's Ex. 1 at 1. In late 2008, SonicBlue representatives were traveling to trade shows and other aerospace industry events to make connections with potential investors and others.

2

6. Although SonicBlue was seeking investors in a variety of ways, the primary target was an investor (or investor group) in Dubai who apparently had expressed a willingness to consider investing several hundred million dollars in SonicBlue.

7. Tammy Lee was introduced to Mr. Lugg by a mutual friend in 2008. They began corresponding in October 2008, and soon Mr. Lugg asked her to submit a proposal for consulting services. She did so in November 2008. She was recruited onto the SonicBlue team by Mr. Lugg to perform public relations, communications and similar functions, pursuant to an agreement negotiated in November 2008 and finalized on or around December 1, 2008.

8. During the negotiations that resulted in their agreement, Ms. Lee emphasized to Mr. Lugg that cash flow was very important to her, given her situation at the time, and that her compensation needed to include a substantial hourly payment in addition to the SonicBlue stock that Mr. Lugg was proposing to award to her in lieu of cash.

9. Their agreement was documented in the form of a Consulting Agreement and Nondisclosure dated as of December 1, 2008 ["the Consulting Agreement"]. Defendant's Exhibit 1. The introductory paragraph of the Consulting Agreement identifies the parties as "SonicBlue Aerospace, Inc. ('Company')" and "Lee Communications, Inc. (Tammy Lee, president) . . . ('Consultant')." However, the signature lines at the end of the Consulting Agreement read as follows:

__s/_____
Name:  Tammy Lee
Consultant


Sonic Blue Aerospace, Inc.

By__s/_____
Title: Chief Executive Officer
Richard H. Lugg
SonicBlue Aerospace, Inc.

3

10. Thus, the Consulting Agreement is consistent in designating SonicBlue as one of the parties, but is not consistent as to Lee Communications, given that Ms. Lee did not sign in her corporate capacity. Also, the Consulting Agreement is inconsistent in its use of pronouns to refer to the Consultant—"his", "her" and "its" are all used with reference to the Consultant.

11. The Consulting Agreement defines the Consultant's services to be "marketing, marketing intelligence, research, public relations, business planning, investment networking, web design, copy marketing materials, and other related services . . ." Defendant's Exhibit 1 at 1. The agreement calls for the Consultant to devote between 20 and 120 hours per month to services for the Company and to be paid $150 per hour initially, plus 10,000 shares of stock upon signing and additional shares for each hour of work at 50 shares per hour. Defendant's Exhibit 1 §§ 3(a)-(b), at 2.

12. Ms. Lee rendered consulting services to SonicBlue for about four months, beginning in December 2008 and ending in March 2009. She submitted an invoice for each month's services, dated the 10th of the succeeding month, beginning January 10, 2009 and ending April 10, 2009. *See* Plaintiff's Exhibit 1. Each of the four invoices was in the name of Lee Communications, Inc. and billed to SonicBlue Aerospace. Each invoice indicated that "[r]emittance is due within thirty days."

13. Ms. Lee readily accepted Mr. Lugg's portrayal of himself as a successful entrepreneur and of SonicBlue as a company with tremendous potential. She was taken in by his grand vision of developing a revolutionary engine. She was impressed by the qualifications of the members of his team, and by what Mr. Lugg claimed to be his connections with high-end investors.

14. According to the voluminous e-mail correspondence between them over the course of the few months they worked together, Ms. Lee and Mr. Lugg also developed what Ms. Lee

4

believed to be a genuine friendship--they came to share their thoughts and ideas about wellness and spirituality and other matters not directly involved in the business of SonicBlue. *See* Plaintiff's Exhibit 2. As a result, Ms. Lee came to hold Mr. Lugg in high trust and regard.

15. Such was her enthusiasm for Richard Lugg's vision for SonicBlue that she involved members of her family in the SonicBlue venture—her father and brother both made investments in stock and her mother provided financial services.

16. In early January 2009, Tammy Lee hosted a meeting of the SonicBlue team at the oceanfront home she had placed on the market. Her work for SonicBlue included travel to the Aspen resort for meetings and skiing; to Washington State for technical meetings at a university; to New York City for more meetings, and to California for a conference in early March.

17. According to the four invoices, Ms. Lee worked 95.75 hours for SonicBlue in December 2008, 47 hours in January 2009, 81.25 hours in February 2009, and 69.75 hours in March 2009, for a total of 293.75 hours. The invoices indicate that she devoted substantial time to "counsel, strategy and planning," "partner meetings," "investor meetings," and "writing and editing," and lesser amounts of time to "media relations" and "web site development." Exactly what is entailed in "counsel, strategy and planning" is not clear, but it appears to involve internal work as opposed to meetings and contacts with outsiders. Her writing and editing focused on media releases, promotional and marketing materials, and also on the SonicBlue business plan, which went through a number of edits, revisions and drafts during her time with SonicBlue.

18. SonicBlue paid Lee Communications a total of $19,487.65 in five payments between December 6, 2008 and March 17, 2009. The payment amounts and dates do not correspond to

5

the dates or the amounts of the Lee Communications invoices to SonicBlue, so it is difficult to correlate any payment to any invoice.

19. The months of January, February and March saw Mr. Lugg and others networking and traveling in an increasingly desperate effort to attract major investors to the project, and, in doing so, burning rapidly through the funds that SonicBlue had obtained from the Maine Technology grant and from other sources not identified in the record.

20. By early March, money was so short that SonicBlue could not fund a trip to Dubai that Mr. Lugg believed he, along with Sam Merrill, the chief financial officer, needed to make in order to woo a potential investor. Mr. Lugg told Ms. Lee that available credit cards were "maxed out" and asked if she would buy his and Mr. Merrill's airline tickets for the flight to Dubai. Still a believer in Mr. Lugg's vision, she agreed, even though the Consulting Agreement says nothing about fronting expenses not related directly to the Consultant's own work.

21. She purchased the two tickets for a total of $2,189.74 through her own credit card. The expense is listed on the April 10 Lee Communications invoice to Sonic Blue.

22. Mr. Lugg was in communication with Ms. Lee during the period March 7-13, while he and Mr. Merrill waited for their meeting with the potential investor. At one point, he wrote that "I have shared with everyone that I shall not be leaving the country without a check." Plaintiff's Exhibit 2 (Richard Lugg e-mail to Tammy Lee March 10, 2009). However, he did return without a check—the promised meeting never happened.

23. The SonicBlue enterprise fizzled in March 2009 for lack of money, although Mr. Lugg has managed to keep SonicBlue going. He continues to seek to raise capital, although with seemingly no more success than came in 2008-09. The corporation continues to make periodic filings with the Securities and Exchange Commission about its investment-related

6

activity, *see* Plaintiff's Exhibit 3.     Although Mr. Lugg may be the only person actively involved in SonicBlue these days, there is no evidence that would justify piercing the corporate veil or holding Mr. Lugg personally liable for the obligations of SonicBlue to Lee Communications or to Tammy Lee.

24. Although Mr. Lugg was critical of Ms. Lee's work for SonicBlue during his testimony, his criticisms are unfounded.     His claim that Ms. Lee was responsible for fundraising is belied by the other evidence, including his own description of Ms. Lee as a "VP level marketing, business development, public and investor relations person." Plaintiff's Ex. 2 (Richard Lugg e-mail message to Lindsay Sterling (Dec. 5, 2008).  Presumably, if she had been responsible for recruiting investors, it should have been Ms. Lee, not Mr. Lugg, who traveled to Dubai in March 2009.

25. For reasons not explained at trial, Ms. Lee and Lee Communications waited six years—until April 10, 2015—to file their complaint in this action.  The complaint names Tammy Lee as plaintiff, individually "and on behalf of Lee Communications, Inc.," presumably because Lee Communications has been dissolved.   The named defendants were Richard H. Lugg, Sam Merrill, and SonicBlue Aerospace, Inc.  Mr. Merrill and SonicBlue Aerospace have both been dismissed as defendants, leaving Richard Lugg as the sole remaining defendant.

26. The complaint contains three counts—breach of contract, unjust enrichment and quantum meruit.

27. Defendant Lugg is entitled to judgment on the breach of contract count because the contractual relationship that Ms. Lee and/or Lee Communications had plainly was with SonicBlue, not Mr. Lugg individually.  Moreover, there is no basis in the evidence to hold Mr. Lugg personally liable for SonicBlue's obligations to Ms. Lee and/or Lee Communications.

7

28. The general six-year statute of limitations applies, *see* 14 M.R.S. § 752. Based on payment on each invoice being due in 30 days, the limitations period arguably had run on the invoices dated January 10 and February 10, 2009 by the time this case was commenced on April 10, 2009. Payment on the March 10, 2009 invoice became past due on April 10, 2009. However, the claim for the amounts billed in the April 10, 2009 invoice is plainly not time-barred.

29. Plaintiff Tammy Lee has not proved that Defendant Richard Lugg is liable to her for breach of contract, or on theories of quantum meruit and unjust enrichment for the services and expenses due under the Consultant Agreement. The Law Court has consistently held that the existence of a valid, enforceable contract often precludes recovery on a theory of unjust enrichment. *See, e.g., id.* ¶¶ 19-20; *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863. The Consultant Agreement is such a valid and enforceable contract and, although there is some uncertainty as to whether the consultant was Lee Communications, Inc. or Tammy Lee herself, there is no doubt that the other party was SonicBlue, not Mr. Lugg.

30. However, not all of Ms. Lee's claim arises under the Consultant Agreement. Her purchase of the two plane tickets for Mr. Lugg and Mr. Merrill at Mr. Lugg's request was clearly outside the scope of the Consultant Agreement. Unlike the expenses she had incurred and billed for relating to her work under the Consultant Agreement, her advance of funds for the plane tickets had nothing to do with her consulting work. Also, this was not a gift—Ms. Lee plainly expected to be reimbursed because she later billed SonicBlue for the cost of the tickets, but there was no discussion of who would be reimbursing Ms. Lee. The fact that Ms. Lee looked first to SonicBlue for reimbursement does not preclude her looking also to Mr. Lugg, at whose request and for whose direct and personal benefit she made the purchase.

8

Likewise, because reimbursement was due May 10, 2009, less than six years before the complaint was filed in this case, the claim is not time-barred.

31. To make out a claim for unjust enrichment,

> a claimant must establish that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.

*Tucci v. City of Biddeford*, 2005 ME 7, ¶ 14, 864 A.2d 185 (quoted in *Me. Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 26, 890 A.2d 707).

32. Here, Ms. Lee conferred a benefit upon Mr. Lugg himself at his request; he clearly accepted the benefit with full knowledge that it was being conferred, and his acceptance and retention of the benefit was under circumstances that render it inequitable for him to retain the benefit without paying its value.

33. Defendant Lugg is entitled to judgment on Count I of the complaint, for breach of contract. Plaintiff Lee is entitled to judgment on Count II, for unjust enrichment. Quantum meruit, the theory of liability asserted in Count III, is usually considered to apply to the provision of goods and services rather than to loans of money, so Defendant will be granted judgment on Count III as well.

IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1. Defendant Lugg's motion for judgment, which was taken under advisement at the close of Plaintiff Lee's case-in-chief is hereby denied.

2. Defendant Richard Lugg is granted judgment on Counts I and III of the complaint.

3. Judgment on Count II of the complaint is granted to Plaintiff Tammy Lee against Defendant Richard H. Lugg in the amount of $2,189.74, plus pre-judgment and post-judgment interest. Pre-judgment interest is 3.27% annually and post-judgment interest is 6.27% annually.

4. Neither party having substantially prevailed, each party shall bear its own costs.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated April 20 2017

_____
A. M. Horton, Justice

**PLAINTIFF, PRO SE**

ATTY FOR DEFENDANT:
JOHN BRANSON, ESQ
LAW OFFICE OF JOHN BRANSON
PO BOX 7526
PORTLAND, ME 04112

10